UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ANNE MARIE MARCHI,

   Plaintiff,

v.

NATIONSTAR MORTGAGE, LLC;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., as
Nominee; SPECIALIZED LOAN
SERVICING COMPANY,

   Defendants.

Civ. No. 17-12026 (KM)

OPINION

### KEVIN MCNULTY, U.S.D.J.:

The plaintiff, Anne Marie Marchi, *pro se,* is or was the owner of a property in Riverdale, New Jersey. Her First Amended Complaint ("1AC", ECF no. 7)[1] asserts a claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 and Regulation X, 12 C.F.R. part 1024, that the defendants failed to give proper consideration to her loss mitigation application before scheduling a foreclosure sale. Now before the court is the motion (ECF no. 9) of defendants Specialized Loan Servicing Company ("SLSC") and Mortgage Electronic Registration Systems, Inc. ("MERS") to dismiss the First Amended Complaint for lack of jurisdiction and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1) & 12(b)(6). For the reasons expressed herein, the Rule 12(b)(6) component of the motion will be granted.

---

[1] The plaintiff has previously filed a Complaint (ECF no. 1) and an Amended Complaint (ECF no. 3). Defendants filed a motion (ECF no. 6) to dismiss the Amended Complaint. The plaintiff responded by filing the currently operative pleading (ECF no. 7), which she has titled "First Amended Complaint." I have adopted that irregular terminology.

1

## I. BACKGROUND

### A. State mortgage foreclosure and adjournment of Sheriff's Sale

On September 10, 2007, Ms. Marchi executed a promissory note for $140,000, secured by a mortgage on her property at 773 Canella Way, Riverdale, New Jersey. (1AC ¶ 23; see copy of Mortgage, ECF no. 9-4 at 2). The lender was the now-defunct Countrywide Home Loans, FSB. On the mortgage, defendant MERS was the designated nominee for Countrywide, its successors and assigns. The loan was thereafter transferred to Nationstar Mortgage, LLC. (1AC ¶¶ 24–25). Defendant SLSC is the loan servicer. (1AC ¶ 16).[2]

The loan went into default. On August 16, 2017, Nationstar Mortgage obtained a final judgment of foreclosure in the amount of $226,286.17 in the Superior Court of New Jersey, Chancery Division, Morris County. (Docket No. F-025125-14. ECF no. 9-4 at 20). A Writ of Execution issued the same day. (ECF no. 9-4 at 22).

Ms. Marchi apparently received an adjournment of the date of a Sheriff's Sale that was scheduled for January, 2018. On March 20, 2018, she applied to the state court for a further extension. (ECF no. 9-4 at 28–29). The state court granted the application. The Sheriff's Sale, then scheduled for March 29, 2018, was adjourned until July 5, 2018. (ECF no. 9-4 at 32).

### B. Allegations of the Complaint

The First Amended Complaint contains a number of generalized allegations. Factually, however, it is focused on a single grievance. The defendants, it alleges, violated RESPA, 12 U.S.C. § 2605, and Regulation X, 12 C.F.R. part 1024, in the months leading up to a scheduled Sheriff's Sale.

---

[2] The 1AC alleges that the loan was assigned to SLSC at some point, a contention that does not seem to match the documents. It is not essential to this motion.

2

Nationstar Mortgage and SLSC are alleged to be loan "servicers" for purposes of RESPA and Regulation X. (1AC ¶ 37). Regulation X imposes certain obligations on a servicer who receives a completed "loss mitigation application" from a borrower. (1AC ¶¶ 38, 39). For example, if a servicer receives a loss mitigation application at least 45 days before a foreclosure sale, it must send an acknowledgement letter stating that the application is complete or requesting additional information. (1AC ¶ 40). When a loss mitigation application is complete at least 37 days before a foreclosure sale, the servicer must evaluate it and provide the borrower with written notice within 30 days stating whether it will offer the borrower any loss mitigation options. (1AC ¶ 42). In the meantime, the servicer is barred from taking certain actions, including "conducting a foreclosure sale." (1AC ¶ 43).

On or before January 10, 2014,[3] Nationstar and SLSC received loss mitigation applications from Ms. Marchi. (1AC ¶ 44). SLSC nevertheless scheduled foreclosure sales for February 1, 2018 and March 29, 2018. (1AC ¶ 45). Between those two dates, on February 12, 2018, Ms. Marchi submitted a complete loss mitigation application and was contingently approved. The Sheriff's Sale was nevertheless scheduled for March 29, 2018, and was postponed "[o]nly through the efforts of the Plaintiff." (1AC ¶¶ 47, 49).

These actions allegedly violated several subsections of section 6 of RESPA, as well as Regulation X. Ms. Marchi sues under Section 6 of RESPA, 12 U.S.C. § 2605(f), which provides as follows:

(f) **Damages and costs** Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) **Individuals** In the case of any action by an individual, an amount equal to the sum of—

(A) any actual damages to the borrower as a result of the failure; and

---

3   *See* n. 5, *infra.*

3

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

## II. STANDARD ON MOTION TO DISMISS

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendants, as the moving parties, bear the burden of showing that no claim has been stated. *Animal Science Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also W. Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

A Rule 12(c) motion for judgment on the pleadings is often indistinguishable from a motion to dismiss, except that it is made after the filing of a responsive pleading. Fed. R. Civ. P. 12(h)(2) "provides that a defense of failure to state a claim upon which relief can be granted may also be made

4

by a motion for judgment on the pleadings." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 426, 428 (3d Cir. 1991). Accordingly, when a Rule 12(c) motion asserts that the complaint fails to state a claim, the familiar Rule 12(b)(6) standard applies, making due allowance, of course, for any factual allegations that are admitted in the responsive pleading. Thus, the moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

In general, review is confined to the allegations in the pleadings. I am permitted, however, to consider "extraneous documents that are referred to in the complaint or documents on which the claims in the complaint are based" without converting this motion into one for summary judgment. *Morano v. BMW of N. Am., LLC*, 928 F. Supp.2d 826, 830 (D.N.J. 2013) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993)).

I have cited records of the state court foreclosure proceeding. I do so not for the truth of facts contained therein, but only in order to establish the nature and scope of prior proceedings between the parties, and the legal effect of rulings of the state court. Such records are subject to judicial notice:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

## III. ANALYSIS

### A. Jurisdiction: *Rooker-Feldman*

Initially, defendants assert that the First Amended Complaint must be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and the *Rooker/Feldman* doctrine. I disagree.

Under the *Rooker–Feldman* doctrine, lower federal courts are barred from hearing federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a state court decision. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *Guarino v. Larsen*, 11 F.3d 1151, 1156-57 (3d Cir. 1993); *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). *Rooker-Feldman* bars federal-court "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The RESPA claim, here, however, does not invite review or reversal of the state court judgment of foreclosure. Rather, the First Amended Complaint alleges that, *after* entry of that judgment, defendants violated RESPA and regulations thereunder by scheduling a Sheriff's Sale without giving due consideration to Ms. Marchi's pending loss mitigation application. That is a separate claim for damages which does not require the Court to overturn the state court judgment.

Out of caution, defendants have addressed the possibility of an injunction against the Sheriff's Sale, which they say would violate *Rooker-Feldman* and the Anti-Injunction Act, 28 U.S.C. § 2283. The short answer is that the Prayer for Relief in the First Amended Complaint does not seek such relief.[4]

---

[4] The record does not reveal whether the sale, scheduled for July 5, 2018, has in fact occurred, mooting even the possibility of injunctive relief.

6

The 12(b)(1) component of the motion is therefore denied. In the remainder of this Opinion, I approach the motion as one under Rule 12(b)(6) asserting that the First Amended Complaint fails to state a claim.

### B. MERS

Few allegations in the First Amended Complaint even mention MERS. The only act attributed to MERS is that it appears on the mortgage as nominee for the original lender, Countrywide. The unnumbered introduction to the First Amended Complaint ("Nature of the Action") seems to state that all of the defendants, as a group, violated RESPA. There is no factual allegation, however, that MERS performed or participated in any of the RESPA violations of which the plaintiff complains.

The Rule 12(b)(6) motion to dismiss the First Amended Complaint for failure to state a claim is therefore granted as to MERS.

### C. SLSC

The gist of the claim is that, although Ms. Marchi had submitted a completed loss mitigation application which was pending, the Sheriff's Sale remained scheduled for March 29, 2018, in violation of RESPA and regulations thereunder. SLSC, she alleges, was obligated to wait until the loss mitigation application was resolved before conducting a sale.

There are also several problems with those allegations.

*First*, the First Amended Complaint distorts the "loss mitigation application" story, as the attached exhibit reveals. Exhibit A to the First Amended Complaint is a letter from SLSC, dated February 12, 2018. (ECF no. 7-1). This letter is the basis for the claim that, while the loss mitigation application was pending, there was a Sheriff's Sale scheduled for March 29, 2018. What the February 12 letter says, however, is the following:

1. "Standard Trial to Modification Program" is denied.
2. "Short Sale Program" is "Contingently Approved," *provided that*, by February 27, 2018, Ms. Marchi provides documentation to support a fair market offer, including executed sales contract, proposed settlement statement, and buyer proof of funds.

7

3. "Deed in Lieu" option, too, is "Contingently Approved," *provided that*, by February 27, 2018, Ms. Marchi contacts SLSC and states her intent to take this option.

Ms. Marchi does not allege, in the First Amended Complaint or anywhere else, that by February 27, 2018, she provided the necessary documentation of a firm short sale transaction (option 2), or that she expressed willingness to deed over the property in lieu of foreclosure (option 3). In short, it appears that the mitigation options had been exhausted by February 27, 2018. Ms. Marchi seems to be quibbling that the sale, though scheduled for a month in the future, should not have even been on the calendar while any part of the application was pending (i.e., before February 27). The violation, she alleges, is that SLSC "scheduled" a sale. (1AC ¶ 45). It is not obvious from a review of RESPA that this would constitute a violation, *see infra,* but it does not matter.[5]

It does not matter because *Second,* the Sheriff's Sale did not in fact occur on March 29, 2018. On March 20, 2018, Ms. Marchi sought and obtained an adjournment of that date, stating that she wished to locate a buyer on her own. Her application states that she was "denied the modification" she had applied for; impliedly confirms that she did not then have a willing buyer lined up; and impliedly confirms that she did not wish to take the option of relinquishing the property to the mortgagee via a deed in lieu of foreclosure. And at any rate the sale *was* adjourned, from March 29 to July 5, 2018; it did not overlap with SLSC's consideration of the loss mitigation application.

---

[5] The sale was pending, by the way, because Ms. Marchi herself had already obtained an adjournment from the original January date, *before* SLSC sent the February 12 letter.

The date that Ms. Marchi applied to SLSC for loan relief is not apparent from the letter. The First Amended Complaint states that she sent loss mitigation applications "On or before January 10, 2014." (1AC ¶ 44) Unless that is a typo for 2018, it is irrelevant. That date precedes the filing of the state-court foreclosure complaint by five months (ECF no. 9-3 at 20), and precedes the entry of the foreclosure judgment by four years.

8

*Third,* a review of the cited sections of RESPA does not in any straightforward way suggest that these facts give rise to a cause of action.[6] The only cited portion of Regulation X that comes close is subsection (g):

> (g) Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
> > (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
> >
> > (2) The borrower rejects all loss mitigation options offered by the servicer; or
> >
> > (3) The borrower fails to perform under an agreement on a loss mitigation option.

---

6     The cited statutory sections are as follows:

> (3) Regulations and effective date
>
> The Bureau shall establish any requirements necessary to carry out this section. Such regulations shall include the model disclosure statement required under subsection (a)(2).

12 U.S.C. § 2605(j)(3).

> A servicer of a federally related mortgage shall not . . .
>
> (C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties; . . .
>
> (E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

12 U.S.C. § 2605(k)(1)(C), (E).

9

12 C.F.R. § 1024.41(g)

Regulation X, in short, provides that "a servicer shall not move for . . . [an] order of sale, or *conduct* a foreclosure sale" while certain loss mitigation matters are pending. It is not alleged that SLSC did any of these things. A Sheriff's Sale had already been ordered by the court. SLSC did not "conduct" the Sheriff's Sale during the relevant period; the violation, according to Ms. Marchi, is that it "scheduled" a future sale. (1AC ¶ 45). The sale merely remained on the calendar, and was delayed more than once, at Ms. Marchi's request, while (she said) she was pursuing various options. Facially, those facts do not violate RESPA or Regulation X.

*Fourth,* in the alternative, the damages from any arguable RESPA violation have not been pled, and appear to be nonexistent. The sale did not occur on March 29, 2018; it was rescheduled until July 5, 2018, a time when the loss mitigation request surely was not pending and had not been pending for some time. *See Oliver v. Bank of Am., N.A.*, No. 13-CV-4888, 2014 WL 562943, at *3 (D.N.J. Feb. 11, 2014) ("Failure to plead actual damages in conjunction with a RESPA claim will result in its dismissal."); *Hutchinson v. Del. Sav. Bank FSB,* 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.").

For all of these reasons, the Complaint is dismissed against SLSC.

### D. Nationstar Mortgage

For clarity, I note the status of defendant Nationstar Mortgage, LLC. The docket contains no return of service as to defendant Nationstar. On June 4, 2018, counsel filed an appearance for Nationstar. The notice of appearance states, however, that Nationstar has not been served with the complaint in its original or amended form, and "reserves all rights with respect to dismissal of same based on lack of service of process." (ECF no. 10).

## IV. CONCLUSION

For the foregoing reasons, the motion (ECF no. 9) pursuant to Rule 12(b)(6) of defendants Specialized Loan Servicing Company ("SLSC") and Mortgage Electronic Registration Systems, Inc. ("MERS") to dismiss the First Amended Complaint for failure to state a claim is GRANTED, and the First Amended Complaint (ECF no. 7) is DISMISSED in its entirety as against SLSC and MERS, with prejudice.

Dated: September 7, 2018

**KEVIN MCNULTY**
**United States District Judge**